## Neil *against* Thompson.

The execution and delivery of a deed by the vendor, and the delivery of bonds and mortgage to secure the purchase money by the vendee, is not always such an execution of the original contract as will preclude an action upon it to compel the performance of some of its stipulations.

An agreement for the purchase and sale of a tract of land, containing a certain number of acres, at a certain price, and at the same rate for any additional number of acres which might be found to be in it, was executed by the deed of the vendor, and bonds and mortgage of the vendee : judgment was afterwards obtained upon the mortgage, and the land was sold by the sheriff to the plaintiff. It was held, that these circumstances did not estop the vendor from suing upon the original agreement for the price of the excess which, upon measurement, the tract was found to contain.

ERROR to the common pleas of *Alleghany* county.

This was an action on articles of agreement for the sale and purchase of a tract of land, by Robert C. Thompson against John Neil, all the facts of which are very fully stated by his honour, who delivered the opinion of the court.

*Biddle*, for plaintiff in error.

*Fetterman*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—This case, if it does not present a new question, presents it in a new shape. We have several cases in which it has been decided that after articles of agreement have been carried into effect by a deed, executed, delivered and accepted, the party shall not go back to the articles and sue on them. This, however, has been restricted by more than one case, admitting exceptions under particular circumstances. The present case is one in which the plaintiff below entered into articles, dated the 28th of March 1819, to sell to the defendant below a tract of land, called Liberty Farm, " containing two hundred and sixty-six acres and twenty-three perches, more or less, for 6200 dollars, together with the flat and skiff, and the utensils belonging to the same ; and further, it is to be understood that if the said land contains more than above mentioned, the said Neil is to pay in proportion, and if less than above mentioned, the said Thompson is to deduct in proportion." After specifying the times, amount of the payments, it states, " the said Thompson to make and execute a deed in fee simple for the premises unto the said Neil when the said 500 dollars are paid, to be executed by the said Robert and the other heirs who are present ; and whereas there is one of the heirs who cannot at this time transfer

his right, said Thompson doth agree he will have the transfer of his brother's right to said land against the 1st of October 1819, and then execute a deed in due form." The above is all that is material in this case. The mother of Robert Thompson had a life estate in the whole tract; the reversion in fee belonged to Robert, Francis, Edward and Catherine. On the 3d of May 1819, a deed for the tract of land, describing it by courses and distances, containing two hundred and sixty-six acres and three-eighths, was executed by the mother Mary Thompson, and by Robert and Francis, to Neil, and on the same day he gave a mortgage and five bonds to Robert to secure the balance of purchase money, amounting to 4100 dollars. Out of the first payment of 2100 dollars, Neil was to pay certain judgments against Mary and Robert Thompson.

At first all were good friends, and Neil accepted the deed though two of the owners of the fee had not executed it, and gave his mortgage and bonds for the whole purchase money, though he had received a title for only half of the fee simple.

Contests and suits soon began, and these eventuated in a *scire facias* on the mortgage, to August 1825: judgment thereon, and *levari facias* and sale to Robert Thompson for 3200 dollars, 5th of January 1827, being about the amount of debt, interest, costs and sheriff's deed. Before suing out the mortgage, however, the two who had not signed the deed to Neil, on the 6th of February 1824 made a deed to Robert, and he, on the 13th of February 1824, executed a deed for their parts to Neil and tendered it to him. These deeds were not before us, but it seems understood they described the land as the first deed, viz. two hundred and sixty-six acres and twenty-three perches.

During the pendency of the suit on the mortgage, more than one surveyor measured the land, and two of them stated the measurement was made at the request of Neil as well as Thompson. The third was asked who employed him, but both parties were present. They agreed in stating there were forty acres of overplus land, that is about one-seventh.

Thompson, after receiving his deed from the sheriff on the sale on the mortgage, brought an ejectment and recovered the possession. After all this, we are trying this suit to recover from Neil the price of the forty acres of overplus land.

The defence was, 1st. That the deed and mortgage extinguished the articles.

2d. That the plaintiff had sold the land as two hundred and sixty-six acres to Neil, had levied on it as Neil's as two hundred and sixty-six, and bought as that quantity, and was estopped from sustaining this suit, at least in equity, if not at law.

I have before stated that, as a general rule, the parties after consummating their contract by deed on the one side, and bonds on the other, have not been allowed to go back and sue on the articles. But in Frederick *v.* Campbell, 14 *Serg. & Rawle* 293, the parol

[Neil v. Thompson.]

declaration of a vendor at the time he delivered the deed, that he would make it good if deficient in quantity, was held sufficient to entitle the vendee to a deduction for the price of twenty-five acres, the quantity deficient, amounting to 500 dollars. I would add, that a judgment had been obtained by the vendor for this 500 dollars, with seven years interest and costs, upon which a *fieri facias* was issued, levied, and the whole tract condemned. At this time, on making an attempt to sell one half of the tract, by the vendee, in order to save the rest, the deficiency was discovered, and the judgment was opened. In the first case in our books, Smith *v.* Evans, 6 *Binn.* 102, the deficiency was not allowed for, because a bond and mortgage had been given, which was held evidence of an agreement to take the quantity as estimated ; but it is said that a great variance between the estimated quantity and the actual quantity might be different, as proving actual fraud, or such mistake that the parties would have been prevented from concluding the bargain if it had been discovered. In Bailey *v.* Snyder, 13 *Serg. & Rawle* 160, the same thing is intimated, that after deed made and mortgage and bonds given, a provision in the agreement to sell by the acre on measurement, will be considered as waived unless the difference be such as to indicate mistake or fraud. How much difference it will require under these cases to let in the party to relief is no where stated. In Frederick *v.* Campbell the whole price was 4500 dollars ; the vendee had paid for all the land he got, yet the whole would have been sold from him for 500 dollars and interest ; that is, for the price of the land he did not get. Would or would not this have been difference enough to have let in the defence without the parol proof ? This was not decided ; he was let into a defence on the parol proof. In the case before us, the price of overplus land is above 950 dollars. Are there not cases in which, from the whole proof, it may be apparent, that although a deed was made and accepted and bonds and a mortgage given, yet there remained several things to be done which kept the articles of agreement still in force ? In this very case, part of the first instalment was to be applied by Neil to discharge three judgments against Mrs Thompson and Robert Thompson ; and, confident that this would be done, the mortgage was taken for the balance. It seems these judgments were not paid. Is not the article in force to recover this ? Two of the four tenants in fee did not sign the first deed. Were not the articles in force to require their deed ? Both parties thought so; and their deed was obtained before suit on the mortgage, and clearly the want of a deed from them would have been a defence to the mortgage suit. Brown *v.* Moorhead, 8 *Serg. & Rawle* 569. The articles then were not merged in the deed and mortgage for all purposes; but both Neil and Thompson took surveyors to the land to ascertain the quantity : after the deed and mortgage, this will go far to prove that when these instruments were executed, both parties understood and agreed that the land was still to be measured and paid for according to the

actual quantity. We think, then, that there was no error in saying that in this case the articles were not merged in the deed and mortgage, but that the matter was open to the jury.

The next point remains. It was insisted that the fact of Thompson's selling on the mortgage and becoming the purchaser, will be an equitable estoppel of his recovery in this suit; and Purviance *v.* Lemon, 16 *Serg. & Rawle* 292 ; and Chew *v.* Mathers, 1 *Penns. Rep.* 475, were cited : but in each of these cases the sale rested on articles of agreement, the legal title remained in the vendor; the vendee had an equity as far as he had paid ; this right was sold and became vested in the vendor, who thus became creditor, and being also owner of the interest of the debtor in the land bound for the debt, was both creditor and debtor, and thus the debt was extinguished. But when a vendor executes a deed, and the fee becomes vested in the vendee, the situation is different, and the vendor taking back a mortgage does not change the matter so as to make the cases cited apply. When the right of Neil was sold by the sheriff, a stranger purchasing would have held the whole tract, including the overplus, clear of any lien of Thompson, although the price for which he bought it had not paid half what was due on the mortgage. A deed conveying a tract by the courses, distances and corners of the returned survey, conveys all overplus contained within these boundaries ; and when Neil got his deed, he and Thompson procured a survey in 1822, and again two surveyors examined it in 1826, before the trial of the suit on the mortgage ; and, as soon as the quantity was finally ascertained, this suit was brought, before the trial and recovery on the mortgage. Neil then owed money secured by the bonds and mortgage, and the price of overplus land not included in the bonds and mortgage. These claims were distinct ; the recovery of one did not affect the right to recover on the other. Did the sale on the mortgage produce any effect on this debt ? Certainly not : if a third person had been the purchaser, not any more of the bonds mentioned in the mortgage is extinguished than what is covered by the amount of sale on the mortgage. The fact that the mortgagee is the purchaser does not alter the case. The balance of the very debt secured by the mortgage is unpaid, and may be recovered by suit on the bonds or notes, or on a covenant to pay the mortgage if it contains one. Morgan *v.* Plumb, 9 *Wendell* 292 ; 11 *Wendell* 292. How then can a sale on a mortgage extinguish a debt different from the one for which the mortgage was given ? The articles of agreement were read in this case to show that Neil owed the money demanded ; but Neil held the land and all the land by his deed, and the land and all the land was sold on the mortgage and still left this debt unpaid.

It may seem hard, and often has been hard since 1815, that when a man has bought a tract of land and paid half the purchase money, he may be sued for the balance, and the vendor may buy back the land at sheriff's sale, and yet the debt is not extinguished ; nay

[Neil v. Thompson.]

though another tract of the vendee has been sold on the same judgment, that part of the debt still remains unpaid. But the courts cannot prevent this: they may lament when it happens; they can do no more. John Neil had paid a large part of the purchase money; he had the use of the land ten years; his vendor got it back, and has this claim still against him. The jury have found the debt due; we cannot say there was error in the directions given the jury.

Judgment affirmed.

GIBSON, C. J., took no part in this cause, being a relation of the defendant in error.