## | Day *against* Lowrie.

A vendor of land who retains the legal estate, and enters a judgment for the purchase-money, sells the land in the possession of the vendee by execution, and purchases it himself for a sum less than the amount due to him, thereby rescinds the contract, and disables himself from making any further claim upon it. And the proceeds of such sale are applicable to the judgment of the vendor, in preference to a judgment entered subsequently to the date of the agreement, and prior to the judgment of the vendor.

ERROR to the common pleas of *Warren* county.

N. A. Lowrie against John Day and William Meredith.

The following facts stated were considered in the nature of a special verdict, with leave to either party to sue out a writ error.

On the 12th of May 1830 an article of agreement was entered into between Day and Meredith and Shubie and Chappel for the sale of a tract of land situated in Warren county; and Day and Meredith at the same time took a judgment bond for the purchase-money; and the said Chappel then took possession of the said land, and made considerable improvements; the bond was entered of record as a judgment on the 13th of September 1832. L. Risley, for the use of N. A. Lowrie, on the 25th of July 1830, filed a judgment against Shubie and Chappel for 85 'dollars. Day and Meredith issued a *fieri facias*, No. 14, December term 1832, levied on the land sold by the said article; *venditioni*, No. 2, of March term 1833, and sheriff's sale of the said land to Day and Meredith for 100 dollars. L. Risley, for the use of N. A. Lowrie, issued a *fieri facias*, No. 25, December term 1832, levied on the same land and condemnation. The question for the opinion of the court is, which of the said parties is entitled to the money made by the sheriff's sale. If Day and Meredith, by the article, bond and judgment thereon, are entitled to receive the money, then judgment for the defendants. If the court is of opinion that the plaintiff is entitled to recover, then judgment for the plaintiff for the amount of his debt, interest and costs.

The court below rendered a judgment for the plaintiff.

*Pearson*, for plaintiff in error. In this case we claim to hold the money arising from the sheriff's sale by virtue of our legal title, which was never parted with. Articles were entered into for the sale of the land, but no deed was to be made until the money should be paid, and a bond taken therefor, which was referred to in the article; and, at a subsequent period, a judgment was entered on that bond, not for the purpose of lien, which was unnecessary, the legal title being retained, but as a means of enforcing payment. We contend that this bond is precisely similar in all respects to a bond accompanying a mortgage; in which case, not only would the money arising

[Day v. Lowrie.]

from the sale on a judgment on the bond be applied to the mortgage, although there were intervening liens, but a lien made after the date of the mortgage and before the entry of judgment would be avoided; Lenox *v.* M'Call, 9 *Serg. & Rawle* 302; and such sale will have the same effect, to all intents and purposes, as would a sale on the mortgage itself. Independent of the more modern doctrine of judicial sales divesting all liens, we contend that a sale on this judgment passes the whole title legal and equitable, the same as a sale on the bond accompanying a mortgage; 1 *Penns. Rep.* 44; and that an assignment of the bond or judgment under it would have the same effect as the assignment of a bond accompanying a mortgage; and the assignee would have a right to look to the lien existing by retention of the legal title to secure his money; 1 *Penns. Rep.* 280; and had several bonds been taken for the several instalments, and assigned, and a loss occurred, it would have fallen equally on the different holders. 17 *Serg. & Rawle* 400.

This case is quite as strong as that of a ground landlord who retains a lien for his rent notwithstanding he has taken a judgment for the amount due; he can retain against judgments prior to his own. Bantleon *v.* Smith, 2 *Binn.* 146. It could scarcely be pretended here, that if judgment had been obtained against Chappel in an action of covenant on the articles it would not have cut out the judgment of Lowrie in this case, unless an amount had been bid for the land sufficient to pay the whole purchase-money, and also Lowrie's judgment. Yet in Gordon *v.* Corry, 5 *Binn.* 522, it is decided that there is no difference between the judgment on the bond given to secure payment of ground rent and one obtained in covenant on the lease.

We had a right to take bond for the purchase-money and still retain the legal title, and by so doing did not part with our lien; 1 *Yeates* 393; though it is conceded that, had the legal title been parted with, according to the case of Freichler *v.* Bower, 7 *Serg. & Rawle* 64, all lien would have been gone; but both that case and Semple *v.* Burd, *Ibid.* 287, establish the distinction, as we contend, where the legal title is retained. And it is certainly well settled in both those cases, also in Irvin *v.* Campbell, 6 *Binn.* 118, that where the legal title is retained, the vendor has his lien. We admit the general principle contained in Atwater *v.* Mathiot, 9 *Serg. & Rawle* 397, also the same principle more fully carried out in 16 *Ibid.* 425, that judgments against vendor and vendee, where an equitable right only is transferred, bind their respective interests; but where a vendor obtains judgment, either by covenant on his articles, or debt on the bond accompanying them, a sale on such judgment passes all the equitable interest if bought by the original vendor, and the whole title, legal and equitable, if bought by a third person; and in the former case the debt is extinguished. Purviance *v.* Lemmon, 16 *Serg. & Rawle* 292. And a sale of the land on such judgment will preclude all further proceedings on the judgment where the creditor

becomes the purchaser, as decided in Chew *v.* Mathers, 1 *Penns. Rep.* 474, which was a judgment on a bond accompanying the articles; and the question arose on a *scire facias* to revive judgment; and, although the creditor had proclaimed he only sold such interest as Mathers had in the land, subject to the payment of the purchase-money, yet it was held to extinguish the debt; this, it is true, was not on a question of distribution; for it appears pretty manifest, from the case reported, that Chew got the money and gave credit *pro tanto* on his judgment, yet the principle of that case, we hold, decides this ; for if the creditor is precluded from all further proceedings after such sale and purchase, he certainly will not be required to lose the amount of money he had to bid in order to get in the equity, or be placed in any worse situation than if he had brought ejectment or covenant.    We admit that if the sale had been made on Lowrie's judgment, Mr Lowrie would have been entitled to the money ; but then, the effect of the sale would have been entirely different ; that would have merely passed the equitable title of Chappel, subject to the payment of our purchase-money; this sale passes both the legal and equitable title, and extinguishes our debt entirely. Nor was Mr Lowrie without remedy, as he might have caused the land to be bid to an amount above our judgment, and all it went for more than would discharge our purchase-money would have gone to him, so that he or others purchasing would be placed in precisely the same situation, as though they had bought on his judgment, as to the amount they must pay.    In the one case, they bid 100 dollars, subject to the legal title which must be paid for; in the other, they bid 100 dollars more than the purchase-money due, so that the only reason why Lowrie will lose his debt is because he did not bid the land to a sum sufficient to cover the prior lien.    This case is in principle very similar to that of the Episcopal Academy *v.* Frieze, 2 *Watts* 16, there the sale took place on the mortgage which had never been recorded or taken till long after the other judgments were entered; yet as it was a sale by the original vendor, and discharged the debt, he was entitled to the purchase-money on his former lien ; and the fact of a deed having been made subject on its face to the payment of the purchase-money cannot distinguish it from this case. The money was claimed not on the mortgage but on the articles, or by virtue of the legal title; and in Love *v.* Jones, 4 *Watts* 471, all the principles for which we contend are recognized and established in their broadest terms.    That the sale by the original vendor of the land passes the entire title clear of incumbrance; that by such sale and purchase by himself the debt is extinguished ; and that he having the oldest lien must be paid his purchase-money.    The fact of a deed having been filed with the prothonotary in that case can make no possible difference, as without delivery to the party the legal estate did not pass ; and, in the present case, had a third person bought the property, the court might have required Day and Meredith to deliver or file a deed for his use before obtaining the money, but

[Day v. Lowrie.]

having themselves become the purchasers that of course was unnecessary.

*Struthers,* for defendant in error. The judgment upon which the plaintiffs claim the money in this case was obtained upon a bond taken as collateral to the agreement, upon which the land was sold by Day and Meredith to Chappel, and of subsequent date to that of Lowry *v.* Chappel.

Was this bond a lien from its date so as to give the claim of Day and Meredith priority upon the interest of Chappel, in the land? is a question which is mainly to to be considered. It is perfectly clear, that it was no *legal* lien until judgment entered upon it. In the case of Kaufelt *v.* Bower, 7 *Serg. & Rawle* 64, it is decided that no equitable lien for purchase-money can exist in Pennsylvania, under any circumstances. And in that case where a deed had been made, and bonds taken for the balance of purchase-money, it was held that the vendor had no lien on the land until he obtained judgment on his bonds, and that prior judgment creditors of the vendee, subsequent to the conveyance, had the preference. And in that case the effect upon the vendor would be more serious than in the present; for there he had lost *all* security and the land too; whereas here he still retained, and had a right to retain the legal title, until paid the purchase-money. The same doctrine is fully established in the case of Semple *v.* Burd, 7 *Serg. & Rawle* 287. It is certainly well settled, then, that he had no lien whatever, and could not get one until judgment entered upon his bond. For sake of illustration, suppose, however, that Chappel had before the entry of the judgment of Day and Meredith, or at the date of the judgment in favour of Lowry, and instead of giving him the judgment, transferred his agreement and equitable interest to Lowry, could Day and Meredith ever have obtained a lien by judgment upon this land? He certainly could not. The legal estate remained in themselves, the equitable title in Lowry, and the bond being against Chappel, a judgment upon it never could have become a *lien* on this land at all.

But it is a conceded point, that all the creditors of a purchaser of lands, who has acquired an equitable interest by his payments, possession, and improvements, or possession and improvements alone, may, by entering up judgments, obtain liens upon that equitable interest, at any time, whilst it remains in the debtor; and may levy upon and sell it. Then is there any reason why the order of liens should be reversed, and the first be made last, where the liens are upon an equitable estate, and where the consideration of one of the judgments happened to be on a bond for purchase-money? The case of Atwater *v.* Mathiot, 9 *Serg. & Rawle* 397, is in point here; and seems fully to cover this whole case. It is there decided, that the judgment creditors of a vendee of land, who has paid part of the purchase-money, and has possession of the land,

[Day v. Lowrie.]

but has no deed, are entitled to the proceeds of sale of his title in preference to the vendor. The only difference between that case and the present is, that there a part of the purchase-money had been paid, and that the property was sold on the judgment of one of the creditors. The difference, I apprehend, is not material. The payment of purchase-money, it is true, would enhance the value of the equitable estate, but not more, perhaps, in that case than the improvements in this case. The principle is the same whether the estate sold be worth more or less. Nor can I perceive any additional right acquired by the circumstance of the sale being made upon Day and Meredith's judgment. The fact is, as appears by the paper books, that Lowry was also proceeding to sell on his judgment, that he proceeded first too, took out his *fieri facias*, held inquisition and obtained condemnation of the property, and how could the fact of the sheriff's having entered the return of sale upon Day and Meredith's judgment, alter the case? Suppose the proceeding had been against any other of Chappel's lands to collect these debts, and Day and Meredith had bid it in on their judgment. There would be equal reason to say they had a right to hold the funds to the amount of their judgment. This equitable interest or estate is just as independent of the legal estate, in the land sold by Day and Meredith, as any other lands or personal property could be; it is no part of what was sold by them. It is an interest created and attached to the estate by the possession and valuable improvements of Chappel, and his creditors have an equal right to resort to it according to the priority of their judgments.

There is nothing in all the cases referred to by the gentleman for the plaintiffs, that militates against the decisions above referred to. And if any thing in the Pennsylvania books does, it is the decision in Love *v.* Jones, 4 *Watts* 465, and that, I apprehend, does not. In that case the circumstances were entirely different, and the question to be decided different. The only bearing that case could have upon this, would be that, if Day and Meredith had executed, tendered, and filed in court, for the use of Chappel, a conveyance or deed of the legal estate, (which they never did do) they might then have sold both the legal and equitable estate, and would then have been entitled to a preference in the appropriation of the money. It would not be to apply it upon this judgment, however, but upon the original article of agreement which held the legal estate until the very moment of sale by the sheriff. Besides, there is strong reason why the vendor should be preferred in a case like that. The creditors had their lien upon the equitable estate alone until the date at which the levy was made, or at least until the *fieri facias* came into the sheriff's hands. And their liens had, undoubtedly, a preference so far as regarded the equitable estate standing alone. But the vendor had conveyed the legal estate and took judgment at the same time for the purchase-money. This being an after ac quired estate the judgments previously entered did not take effect

[Day v. Lowrie.]

upon it; and of course the vendor had the first lien upon the legal estate. Under this state of things, then, the question must arise whether he having the oldest lien on the *legal*, or he having it upon the *equitable*, estate, should be preferred. And it would seem only just that he who had from the beginning held the land on a lien upon it should prevail. But in the case in hand no deed was ever tendered or filed; and it is not pretended that any thing but the interest of Chappel, viz., his equity, was sold by the sheriff. Now, under the circumstances, could any thing more have been done by either of the execution creditors? The judgment of Day and Meredith, having been obtained upon a bond which was a mere personal security, can have no preference over any other.

The opinion of the Court was delivered by

SERGEANT, J.—This case is in principle ruled by the cases of Purviance *v.* Lemmon, 16 *Serg. & Rawle* 292, and Chew *v.* Mathers' executors, 1 *Penns. Rep.* 474. The vendor articles to sell the land, but retains the legal estate until the purchase-money is paid, for which he takes a judgment bond. The vendee goes into possession, and makes default in payment. The vendor enters up his judgment, sells the land on an execution and purchases it for less than the purchase-money due. By so doing the contract is rescinded and the articles of agreement are extinguished; the consequence of which, is, that the vendee's equitable bill is gone, the vendor taking  back the land as of his former estate, and losing all further remedy for the residue of the purchase-money, with the extinction of the equitable estate of the vendee, his intervening incumbrances are also defeated. Had a third person purchased, the prior judgment creditors of the vendee would have been entitled to payment from the proceeds of the sale, because the equitable estate would still subsist and remain liable to the original vendor in the hands of the new purchaser. But if the intervening creditors of the vendee now take the money, the vendor must entirely lose his purchase-money, or so much of it as they take; for he has no further resort against the vendee or his representatives, according to the cases above mentioned. For these reasons, we are of opinion that the court below erred in entering judgment on the case stated for the plaintiff and that judgment should have been rendered for the defendants.

Judgment reversed, and judgment for plaintiffs below.