## William G. Warden *vs.* Henry N. F. Marshall.

A., having ready for delivery in a bonded warehouse in a city a certain quantity of oil of a particular kind, made a contract with B. to deliver to B. for an agreed price such a quantity of oil of that kind in such a warehouse in that city during a certain month at buyer's option on ten days' notice within the month. About ten days before the end of the month, B. employed a broker to sell the oil thus contracted for, who sold it to A. for a price less than the price agreed in the original contract. *Held*, that there was no rescission of that contract, although the oil never passed from the actual possession of A., that the authority given by B. to the broker to sell the oil included the exercise of the option to take it under the contract; and that the resale of it by the broker to A. implied an acceptance of it from A. as B.'s property, which dispensed with the necessity of any formal delivery and redelivery of it. *Held, also*, that A. might maintain an action against B. on a count upon an account annexed in which he charged B. with the price agreed in the original contract, and credited him with the price for which the oil was resold by the broker.

Hoar, J.   This case, when reduced to its substance, amounts to this:

The plaintiff had made a contract with the defendant to sell him two hundred and fifty barrels of oil, of a certain quality, at an agreed price, to be delivered at a bonded warehouse in Phila-delphia during the month of November 1866, at buyer's option on ten days' notice within the month.   The plaintiff had the requisite quantity of such oil ready for delivery in a bonded warehouse in Philadelphia.   The market price of oil having fallen, the defendant, about the 20th of November, employed some brokers to sell the oil for him at a fixed price.  ·The brokers sold it to the plaintiff for that price, no one else being found who was willing to give so much.   The oil being already in the plaintiff's possession in the bonded warehouse, no other delivery was necessary to complete the sale.

· The plaintiff sues upon an account annexed, to recover the agreed price of the oil under the original contract, giving the defendant credit for the amount for which it was repurchased; and we can see no objection to the maintenance of the action.

The defence seems to rest upon the ground that the original contract was rescinded; that no oil was ever delivered in pursu-ance of it.   On the contrary, we think these facts show that it was completely executed.   The oil which was the subject of the contract was designated by the bill of sale, and was in the plain-tiff's possession.   The authority to the brokers to sell the oil included the exercise of the option to take it under the original contract; and the resale of it to the plaintiff implied an accept-ance of it from the plaintiff as the defendant's property.

The plaintiff might have made out one bill of sale from him-self to the defendant, and received in return a corresponding bill of sale from the broker at the reduced price.   Instead of this, the plaintiff credited the amount due on the sale to him in his bill to the defendant.   But this cannot alter the essence of the transaction.   No more effectual acceptance of the oil from the plaintiff could be devised than in assuming with his consent the ownership of it, so far as to make a new contract of sale to him The delivery and redelivery of the oil would have been an idle

ceremony which the law does not require. There are no rights of third parties involved, and the question is only what would be sufficient to change the title to the property as between the two parties to the contracts. To hold the transaction which the evidence discloses to be a mere rescinding of the original contract would be an entire disregard of the manifest intention of the parties; and would produce a result wholly at variance with it.

The cases from Pennsylvania cited by the counsel for the defendant are all cases arising under a peculiar provision of law, by which equitable estates can be levied on at law for the satisfaction of debts. A vendor, not having conveyed the legal estate in land which he sold, levied upon the equitable interest which had passed to the vendee, in order to obtain payment of the purchase money ; and, the levy not producing enough, sued the vendee for the part which remained unpaid. It was held that the original contract was rescinded in the view of equity, because the vendor had acquired the vendee's interest under the contract for a consideration, and cut off the right to a transfer of the legal title. But Chief Justice Gibson observes, in *Purviance* v. *Lemmon*, 16 S. & R. 292: " This suit being brought for the residue of the purchase money, it is said that the reacquirement of the equitable interest by the vendor does not work a dissolution of the contract. At law it certainly does not."

The fact of the difference in price shows that it was not the intention of the plaintiff, nor the expectation of the defendant, that the first contract should be rescinded.

There having been something fully equivalent to a delivery of the oil sold, the count on an account annexed is proper and sufficient. *Stearns* v. *Washburn*, 7 Gray, 189.

*Exceptions overruled.*

*J. D. Ball*, for the defendant, cited *Chew* v. *Mather*, 1 Penn. 474; *Purviance* v. *Lemmon*, 16 S. & R. 292; *Day* v. *Lowrie*, 5 Watts, 412; *Healy* v. *Utly*, 1 Cowen, 345; *Folsom* v. *Great Falls Manufacturing Co.* 9 N. H. 355; *Sizemore* v. *Morrow*, 6 Ired. 54; *Morris* v. *Rexford*, 18 N. Y. 552.

*E. M. Bigelow*, for the plaintiff, was not called upon.