BLACK BEAUTY COAL COMPANY *vs.* BENJAMIN H. COHEN
& another.

Suffolk. .February 8, 1929. — April 12, 1929.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Sale. Frauds, Statute of. Damages,* In contract.

If, in response to an oral order for coal of a value in excess of $500, the coal was forwarded by railroad to the purchaser, one carload reaching the purchaser's siding and the other carloads the railroad yards nearby, to which the purchaser had access; and thereafter the purchaser, after having acknowledged to the seller receipt of one carload and inspected all of the coal, notified the seller that he rejected all the coal because of its quality, but made efforts to dispose of the coal to the public, findings were warranted that there was a receipt and acceptance of all the coal by the purchaser sufficient to satisfy the requirements of the statute of frauds, G. L. c. 106, § 6.

In an action of contract by the seller against the purchaser in the circumstances above described, it appeared that the coal shipped was of an amount and quality conformable to the purchaser's order; and that it remained in the railroad yards for more than two months after its arrival, when it was sold by the railroad corporation, the proceeds of the sale being applied on account of the charges for freight. The plaintiff sought to recover the contract price of the coal, together with charges for demurrage between the date when the defendant notified the plaintiff that he rejected the coal and the date of the sale, and the remainder of the freight charges. *Held,* that

(1) The plaintiff was entitled to recover the purchase price;
(2) The plaintiff was liable to the railroad corporation in the first instance for freight and demurrage charges;
(3) As between the plaintiff and the defendant, the defendant was obliged to pay the freight charges, and the plaintiff was entitled to recover them in this action;
(4) The demurrage charges were due to the defendant's failure to remove the coal from the cars, and the plaintiff also was entitled to recover them in this action.

CONTRACT. Writ dated May 10, 1926.

The pleadings and material evidence at the trial in the Superior Court before *Whiting,* J., are described in the opinion. At the close of the evidence, and after the jury had answered a special question submitted to them, the

judge ordered a verdict for the defendants and reported the action for determination by this court.

*E. J. Brandon,* for the plaintiff.

*J. J. Gaffney,* for the defendants.

SANDERSON, J.   The plaintiff seeks to recover in different counts the price of coal sold and delivered, freight and demurrage charges caused by the defendants' failure to discharge the coal from the cars on arrival, damages for breach of the defendants' contract to buy the coal and the reasonable value of services performed, and reimbursement for expenses and liability incurred for freight and demurrage charges in endeavoring to perform the contract.   The answer is a general denial; it also sets up the statute of frauds as a defence.

The defendants are copartners doing business under the name Mt. Bowdoin Fuel Company.   In January, 1926, the defendant Levine visited Pennsylvania and met one Brennan, the secretary of the Somerset County Coal Operators' Association of which the plaintiff is a member.   Thereafter a telegram signed "J. S. Brennan, Secretary Somerset County Coal Oprs. Assn., Somerset, Penna." was sent Levine stating "Can furnish quick eight cars lumpy mine run smokeless two dollars net ton Can you use."   Upon receipt of the telegram Levine, in a telephone conversation, asked Brennan to ship the coal, and the plaintiff, in response to a telephone request from Brennan, sent the coal in nine cars to the defendants. The defendants understood that the coal to be shipped belonged to some operator.   On the twenty-third day of February Brennan wrote the defendants in confirmation of the telephone conversation stating that nine cars, designated by number, had been shipped to the Mt. Bowdoin Fuel Company at its siding, Dorchester, and describing the kind of coal, stating price per net ton, and when cars would leave the mine.   He signed his name "J. S. Brennan Secretary."   The letter was written on the letterhead of the Somerset County Coal Operators' Association and a copy of it was sent to the plaintiff.   Brennan testified that the defendants were to send a letter of the same purport to the plaintiff but that this was never done.   There was evidence that the nine cars had about

the tonnage of eight standard cars. One of the cars reached the defendants' siding; the other eight were at the Readville yards. There was evidence that all of the coal was inspected by the defendants. On March 4, a telegram was sent to Brennan by the defendants notifying him of the receipt of a carload of the coal shipped and advising that it contained an excessive amount of impurities and that they were obliged to reject all nine carloads as not high grade fuel. Two days later the defendants sent another telegram to Brennan to the effect that they could not use the grade of coal at any price. The coal was sold by the railroad company in May, 1926, for freight charges, and brought $760.13. The parties agreed that the price for the nine carloads was $1,048.50; that the amount due for freight was $1,975.54, against which the amount received by the railroad company for the coal is credited, and that the demurrage amounted to $2,627, up to May 18, 1926. None of these items has been paid. No demurrage charge was made until after the telegram in which the defendants refused to take the coal had been sent. Notice of this refusal was telephoned to the plaintiff about the fifth or sixth of March, 1926. A claim for freight and demurrage charges has been made against the plaintiff by the carrier. It was agreed that the contract was made in Pennsylvania; that the statute of frauds in that State is the same as in this Commonwealth; and that the case is to be determined as if the contract had been made here.

By consent of the parties, the question, "Was the coal shipped of the quality called for by the contract?" was submitted to the jury; they answered in the affirmative. Thereupon the judge, subject to the plaintiff's exception, allowed the defendants' motion for a directed verdict upon the ground that the contract was within the statute of frauds, with a stipulation of the parties that if this order was wrong and the case should have been submitted to the jury, judgment is to be entered for the plaintiff for the total of such of the foregoing items as the Supreme Judicial Court determines to be proper elements of damages, with interest.

The carloads of coal had been selected by the plaintiff and had been forwarded by a carrier to the defendants. They

had reached a place to which the buyers had access, and from which the goods might be taken without the buyers obtaining permission of any one and they were actually examined by the defendants.   Their telegram acknowledged the receipt of one car.   Upon the evidence a finding could have been made that there had been a sufficient transfer of possession to satisfy the requirement of the statute of frauds as to the receipt of the goods.   *Frostburg Mining Co.* v. *New England Glass Co.* 9 Cush. 115.   *Johnson* v. *Cuttle,* 105 Mass. 447.   *Shepherd* v. *Pressey,* 32 N. H. 49, 55.

By their telegrams the defendants refused to accept the coal after inspection.   If they had done no more their defence of the statute of frauds might be maintained as matter of law.   But Levine testified that he tried to dispose of the coal to the public; and Brennan testified that Levine told him that he had tried to dispose of it and had received an offer of fifty cents a ton in Boston, but that the price of the coal was $2 a ton and the freight $4.20.   G. L. c. 106, § 6 (3) provides that "There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."   In *Garfield* v. *Paris,* 96 U. S. 557, 563, the court said, ". . . it is well settled that any acts of the parties indicative of ownership by the vendee may be given in evidence to show the receipt and acceptance of the goods to take the case out of the Statute of Frauds." In *Kemensky* v. *Chapin,* 193 Mass. 500, 506, the court stated the ordinary test for determining the question of acceptance to be "whether the conduct of the buyer in dealing with the goods is such as fairly to indicate an assertion of ownership." A resale, mortgage or pledge of the goods by the buyer will be or may be found to be such an exercise of ownership as to be a constructive receipt and acceptance meeting the requirements of the statute of frauds.   1 Williston, Sales, (2d ed.) § 77.   *Harrison* v. *Scott,* 203 N. Y. 369, 373.

In *Beedy* v. *Brayman Wooden Ware Co.* 108 Maine, 200, 205, the court said "In reason we fail to distinguish between a sale and an offer to sell.   There is no difference in so far as the act of the alleged purchaser is concerned.   He does

no more than offer the goods in either case.   Whether, when he has made the offer, his offer becomes a sale in fact depends upon the action of a party who bears no relation to the parties, inter se, to the original alleged sale.   In either case his act is equally an assertion of ownership."   See also *Shepherd* v. *Pressey*, 32 N. H. 49, 56.   There seems to be some conflict of authority on the question whether an offer to resell by the buyer is evidence of acceptance, but in principle, as well as by what seems to be the weight of authority, the legal effect of an offer to sell could be found to be the same as an actual sale of the goods.   *Bicknell* v. *Owyhee Sheep & Land Co. Ltd.* 31 Idaho, 696, 703.   *Harrison* v. *Scott, supra,* page 377.   *White* v. *Schweitzer,* 221 N. Y. 461.   See *Warden* v. *Marshall,* 99 Mass. 305, 306; *Brown* v. *Nelson,* 66 Vt. 660; *Blenkinsop* v. *Clayton,* 7 Taunt. 597.   See *contra Lewis Jones & Co.* v. *Mechanics' Bank of Baltimore,* 29 Md. 287, 297.

Under these circumstances the question, whether the defendants had exercised acts of dominion that were consistent only with ownership and had therefore accepted the coal notwithstanding their statements in the telegraph dispatches, should have been left to the jury to decide.

It follows from the terms of the stipulation that the defendants are liable for the contract price of the coal.   *Leonard* v. *Carleton & Hovey Co.* 230 Mass. 262.   See *John B. Frey Co. Inc.* v. *S. Silk, Inc.* 245 Mass. 534, 541.   G. L. c. 106, § 35 (1); § 52 (1).   The plaintiff entered into the contract for transportation with the carrier and would be liable to it for freight in the first instance.   *Finn* v. *Western Railroad,* 112 Mass. 524, 533.   *American Railway Express Co.* v. *Mohawk Dairy Co.* 250 Mass. 1, 8.   As between the plaintiff and the defendants the latter were to pay the freight.   *Wooster* v. *Tarr,* 8 Allen, 270.   *Blanchard* v. *Page,* 8 Gray, 281.   The consignor became liable to the railroad corporation for demurrage after being notified that the consignee had refused to take the coal.   The defendants were at fault in refusing to discharge the coal from the cars, and thereby caused the demurrage charges for which the railroad corporation, after notice, had the right to look to the plaintiff.   *Baltimore &*

*Ohio Railroad* v. *Luella Coal Co.* 74 W. Va. 289. See *Miller* v. *Mansfield,* 112 Mass. 260.

In accordance with the terms of the report, judgment is to be entered for the plaintiff for $4,890.91, being the price of the coal plus the net amount due for freight and demurrage, to which sum interest from the date of the writ is to be added.

*So ordered.*